**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SWYFFT, LLC, | |
|         Petitioner, | |
|    vs. | Case No. 1:25-cv-00675 |
| CLEAR BLUE INSURANCE COMPANY, | |
|       Respondent. | |

## SWYFFT, LLC'S REPLY TO CLEAR BLUE INSURANCE COMPANY'S BRIEF IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

The Court should grant Petitioner Swyfft, LLC's ("Swyfft") Petition to Compel Arbitration under the Federal Arbitration Act ("FAA") because the General Agency Agreement ("Swyfft GAA") (Exhibit B to the Petition) between Swyfft and Clear Blue Insurance Company ("CBIC") requires arbitration of CBIC'S claims against Swyfft concerning the parties' Reimbursement Funding Agreement ("RFA") (Exhibit C to the Petition). Nothing in CBIC's response to Swyfft's Petition supports a different conclusion.

As Swyfft stated in its Petition, the parties entered into the Swyfft GAA to produce a program of insurance (the "Swyfft Program") under which Swyfft wrote homeowners' and commercial insurance on behalf of CBIC and administered the insurance policies. Swyfft GAA, §§ 1.01, 1.04; *see* Pet. ¶ 8. CBIC is the insurance company in this arrangement and it purchased reinsurance on the policies Swyfft wrote under the Swyfft Program. Pet. ¶ 9. Subsequently, Swyfft and CBIC entered into the RFA to address the Parties' obligations for certain costs associated with the reinsurance on the Swyfft Program. RFA §§ 1, 2; *see* Pet. ¶¶ 16-18.

The Swyfft GAA contains a broad arbitration provision that requires arbitration of "[a]ny dispute between any Party arising out of this Agreement or its termination, or concerning the

interpretation or validity, whether arising before or after termination of this Agreement." Swyfft GAA § 12.01; *see* Pet. ¶ 24. Further, Section 12.04 of the Swyfft GAA states: "In the event of a dispute between the Parties concerning this Agreement, the Reinsurance Agreement, *or any other agreement ancillary thereto*, the entire dispute shall be subject to arbitration as provided in this Article." (emphasis added). *See* Pet. ¶¶ 25, 27. CBIC's claims against Swyfft under the RFA are subject to arbitration because the RFA is an "agreement ancillary" to the Swyfft GAA and the "entire dispute" between CBIC and Swyfft regarding responsibility for costs of reinsurance for the Swyfft Program includes CBIC's claims under the GAA and the RFA. Pet. ¶¶ 26-28; 34-36.

In response, CBIC asserts that a permissive forum selection clause in the RFA, allowing claims under that agreement to be brought in the Western District of North Carolina, overrides the arbitration clause in the Swyfft GAA. For the reasons explained below, CBIC is incorrect.

## ARGUMENT

### I.   The parties' dispute under the RFA is subject to arbitration.

"Under the FAA, arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Schuerer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citing 9 U.S.C. § 4). "Generally, federal policy favors arbitration, and once an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983)).

CBIC does not challenge that the arbitration provisions in the Swyfft GAA are valid and enforceable, that it has refused to arbitrate its claims against Swyfft under the RFA, or that an order compelling arbitration of those claims is proper if Swyfft is correct that the arbitration provisions

of the GAA apply to the parties' dispute under the RFA.

Instead, CBIC tries to distract the Court's attention from the arbitration provisions by relying on a permissive forum selection clause in the RFA. CBIC initially rests its argument on the general proposition that forum selection clauses are presumed to be valid and enforceable. CBIC Resp. at 5-6. Swyfft does not dispute that general rule. In fact, because an arbitration provision is "a species of forum selection clause," this rule supports Swyfft's argument that the arbitration provisions of the Swyfft GAA should be enforced. *IAC/InterActiveCorp. v. Roston*, 44 F.4th 635, 640 (7th Cir. 2022). CBIC's remaining arguments should be rejected.

### A. The RFA's permissive forum selection clause did not waive or supersede the parties' right to arbitrate.

CBIC's argument that the forum selection clause in the RFA waived or superseded the parties' right to arbitrate must fail. The RFA forum selection clause does not *require* litigation of the parties' disputes under the RFA in federal court. That provision merely states that "all disputes [under the RFA] shall have jurisdiction in the federal courts located in Charlotte, NC." RFA § 6(i). This provision does not state that the Western District of North Carolina has *exclusive* jurisdiction over disputes under the RFA or that the parties must litigate their disputes; indeed, it is silent about the obligation to arbitrate set out in the GAA.

The RFA provides that it is to be construed under North Carolina law. *Id.* "Generally in North Carolina, when a jurisdiction is specified in a provision of contract, the provision generally will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive." *See Caissons, LLC v. Choate Constr. Co.*, 784 S.E.2d 650, 654 (N.C. App. 2016) (quoting *Cable Tel. Servs., Inc. v. Overland Contracting, Inc.*, 574 S.E.2d 31, 34-35 (N.C. App. 2002)). "Mandatory forum-selection clauses recognized by [North Carolina] appellate courts have contained words such as 'exclusive' or 'sole' or 'only'

which indicate that the contracting parties intended to make jurisdiction exclusive." *Halifax Linen Serv., Inc. v. Tidelife, LLC*, 2019 WL 2812412, at \*4 (E.D.N.C. July 2, 2019) (quoting *Capital Bank, N.A. v. Cameron*, 753 S.E.2d 153, 156 (N.C. App. 2013)). "By contrast, courts applying North Carolina law have not interpreted the term 'shall' as sufficient to create a mandatory forum-selection clause." *Id.* (collecting cases). Under well-settled North Carolina law, the passive language in the RFA's forum selection clause (providing that North Carolina courts *shall have* jurisdiction) is insufficient to establish that the parties' intended to make North Carolina or federal court the exclusive jurisdiction for disputes under the RFA. That provision therefore does not preclude enforcement of the GAA's arbitration provision and does not govern the question of arbitrability.

As between an initial, broad arbitration provision and a subsequent, non-mandatory forum selection clause that makes no mention of arbitration, the arbitration provision controls. If the parties intend a subsequent agreement to waive their right to arbitrate a dispute established in a prior agreement, they must make their intention clear: "a forum selection clause cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration." *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 396 n. 11 (5th Cir. 2002). This is especially where, as here, the forum selection clause is permissive and not mandatory. Consistent with this rule, the Seventh Circuit has held that an obligation to arbitrate "can be superseded or waived by *specific agreement* of the parties." *INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 503 (7th Cir. 2020) (emphasis added). As authorities the Seventh Circuit cited (*see id*. at 503 n.8) make clear, the "specific agreement," at minimum, must expressly reference the parties' intent to override the previously established arbitration obligation. *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 103 (3d Cir. 2018) ("[w]ithout a specific reference to arbitration, the forum-

-4-

selection clause requiring parties to litigate actions 'arising out of' the contract and related transactions lacks the specificity required" to advise the parties they are waiving their right to arbitrate) (citing *Patten Secs. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987)); *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 328 (4th Cir. 2013) ("Any such provision must be sufficiently specific to impute to the contracting parties the reasonable expectation that they are superseding, displacing, or waiving the arbitration obligation[.]"); *id.* at 329 ("one would reasonably expect that a clause designed to supersede, displace, or waive arbitration would mention arbitration"). Additionally, CBIC's counsel drafted the arbitration provisions in the GAA and the forum selection clause in the RFA, Complaint at ¶ 38, *Clear Blue Ins. Co. v. Swyfft LLC*, No. 3:24-cv-1063 (W.D.N.C.), ECF No. 1, and any doubts about the coverage of the arbitration provisions and the meaning of the forum selection clause should be strictly construed against CBIC as the drafter of the provisions. *See Fontana v. Southeast Anesthesiology Consultants, P.A.*, 729 S.E.2d 80, 86 (N.C. App. 2012). Here, the RFA's forum selection clause makes no mention of the parties' obligation to arbitrate and therefore cannot override that obligation even if it were a mandatory provision.

Further, CBIC's efforts to read the RFA provision in isolation ignores basic rules of contract interpretation. The GAA and RFA concern the same subject matter—the parties' responsibilities for funding reinsurance for policies in the Swyfft Program—and it is a well-settled proposition that contracts between the parties regarding the same subject matter should be construed together. *See, e.g., Carolina Milk Producers Ass'n Co-op., Inc. v. Melville Dairy, Inc.*, 120 S.E.2d 548, 559 (N.C. 1961); *Mayer v. Ill. Life Ins. Co.*, 211 Ill. App. 285, 291 (Ill. App. 1918) ("Where different instruments are executed by the same parties relating to the same subject matter, all of the instruments should be construed together in determining the real intention of the parties.

This is true whether the various instruments are executed at the same time or at different times." (citations omitted)); *see also Pertee v. Goodyear Tire & Rubber Co.*, 67 F.3d 296 (table), 1995 WL 578057, at *3 (4th Cir. Oct. 2, 1995) ("While there are two separate writings, here the parties are the same, the subject matter is the same and the relationship between the documents is clearly apparent in each writing. We construe the writings together and consider them to constitute one transaction."); *Care Group Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 753 (Ind. 2018) (court may "construe together contracts that relate to the same transaction or subject matter, if nothing indicates a contrary intention" even if contracts were "executed at different times"); *Mazzella Lifting Techs., Inc. v. Farmer*, 2017 WL 4883238, at *4 (N.D. Ohio Jan. 20, 2017) ("It is also well settled that two or more contracts can form the basis of a parties' agreement. A court faced with multiple contracts must construe those writings together and consider them to embody one transaction when the parties are the same, the subject matter is the same, and the relationship between the documents is clearly apparent.") (internal quotation marks omitted).

This is particularly true in this case because the RFA is not an integrated agreement. *See Melvin v. Principi*, 2004 WL 3769429, at *6 (E.D.N.C. Dec. 2, 2004) (a totally integrated document is a writing that "was intended by the parties to represent all their engagements as to the elements dealt with in the writing"). The RFA does not contain a merger clause and instead explicitly states that it is supplementary to other agreements, such as the GAA. The RFA's recitals acknowledge that the Parties entered into GAA to create the Swyfft Program and that CBIC entered into reinsurance agreements for reinsurance coverage related to the Program. RFA, Recitals A-B. The RFA also states that the Parties replaced the original reinsurer with a new panel of reinsurers for the Programs. RFA, Recital C. The purpose of the RFA was to "memorialize [the Parties'] agreements regarding future funding and reimbursement guarantees to CBIC in connection with

reinsurance on the Program[].” RFA, Recital D. Additionally, consideration for the RFA is explicitly based on “the mutual benefits and covenants between the parties in the GAA and herein.” *Id*. Plainly, the RFA was drafted in contemplation of the continued existence of other enforceable agreements between the parties, not to supersede those agreements.

Further, the GAA’s arbitration provisions are easily harmonized with the RFA’s non-mandatory forum-selection clause. *See Sharpe v. AmeriPlan Corp.*, 760 F.3d 909, 916 (5th Cir. 2014). Stating that any lawsuit under the RFA may—but does not have to—be brought in the Western District of North Carolina is not incompatible with the arbitration provisions because the RFA provision can apply either to those issues under the RFA that are not subject to arbitration under the GAA or the parties can choose to waive their right to arbitrate and proceed in court instead. *See Sharpe*, 760 F.3d at 916; *Personal Sec. & Safety Sys.*, 297 F.3d at 395-96; *see also Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 950 (7th Cir. 2020) (“[A] party can waive a contractual right to arbitration.”). The RFA forum selection clause, therefore, simply means that if the parties choose to waive their right to arbitrate a dispute, they may file a lawsuit in the Western District of North Carolina. For this reason, CBIC’s argument (Resp. at 6) that enforcement of the arbitration provisions would render the forum selection clause “superfluous” has no merit.

CBIC’s argument is further undercut by the fact that the GAA contains a similar forum selection clause to that found in the RFA, yet CBIC has conceded by filing its arbitration of its claims under the GAA that the arbitration provisions in the GAA control over the GAA’s forum selection clause. The same should hold true for the RFA’s forum selection clause. Section 11.04 of the Swyfft GAA provides “the venue and jurisdiction of any controversy arising out of this Agreement, or for the breach thereof, *shall be in* the federal courts located in Mecklenburg County, North Carolina.” (emphasis supplied). The language in the GAA forum selection clause is, in fact,

stronger than that found in the RFA's forum selection clause, yet CBIC has plainly acknowledged that the provision does not prevent arbitration of the parties' disputes. CBIC's actions establish that the arbitration provisions and forum selection clause can be harmonized.

**B.     The parol evidence rule is inapplicable.**

CBIC's argument that the parol evidence rule bars consideration of the GAA's arbitration provision is misguided. Resp. at 6-7. To start, construing two contracts concerning the same subject matter together is a long-established method of contract interpretation, and is not considered parol evidence. Additionally, in the absence of a merger clause stating that there are no other prior agreements between the parties, the parol evidence rule does not bar consideration of other agreements such as the GAA here. *See New v. Thermo Fisher Sci., Inc.*, 2022 WL 787954, at *16 (M.D.N.C. Mar. 15, 2022) (explaining that the parol evidence rule prohibits evidence "to vary add to, or contradict a written instrument intended to be the *final integration* of the transaction") (internal quotation marks omitted and emphasis added).

CBIC claims that the RFA is at least a "partially integrated agreement," and that parol evidence cannot be considered to contradict the terms of the partially integrated document. Resp. at 7. This argument misses the point. The RFA explicitly references and implicitly incorporates the parties' other agreements, such as the GAA. Interpretation of the RFA, therefore, cannot be in isolation and must be done with reference to the GAA. Further, CBIC's own authority, *West Bend Mutual Insurance Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666 (7th Cir. 2015), undermines its argument. In *West Bend*, the court explained that "[i]f a contract is only partially integrated . . . parol evidence may not be used to explain the writing or to introduce terms that contradict the written agreement." *Id*. at 673. As discussed, the GAA's arbitration provisions do not contradict the RFA's forum selection clause because the RFA provision is a permissive choice

of venue that does not require litigation of disputes or mandate that the litigation take place in North Carolina. Instead, the provision operates when a dispute is not subject to arbitration, or the parties waived their right to arbitrate a dispute. Because the provisions can be harmonized, even if the GAA arbitration obligation were considered parol evidence (it should not be), that evidence would not be barred under *West Bend*.

## II.    CBIC's arguments regarding Core are a non-sequitur.

CBIC asserts that Core is also a party to the RFA, but the Court cannot order arbitration in Illinois of CBIC's claims against Core under the RFA pursuant to the Swyfft GAA. Resp. at 7-9. This argument misunderstands Swyfft's Petition. To be clear, Swyfft does not—and cannot—request that this Court compel arbitration of CBIC's claims against Core. Instead, Core has filed a motion to compel arbitration of CBIC's RFA claims against it in North Carolina, pursuant to the terms of the Core GAA, which requires arbitration between CBIC and Core to take place in that State. *See* Defendant Core Program, LLC's Motion to Compel Arbitration and Dismiss, *Clear Blue Ins. Co. v. Swyfft LLC*, No. 3:24-cv-1063 (W.D.N.C.), ECF No. 18.[1] The instant Petition concerns *only* arbitration of CBIC's claims against Swyfft.

CBIC argues without citation to any authority that it "must be entitled to litigate its contractual claims under the RFA against both Swyfft and Core—a non-party to the Swyfft GAA—in the same action." Resp. at 8. There is no reason that is true. To start, it is common that some claims against a defendant in an action are subject to arbitration while other claims in that action, including claims against other defendants, are not subject to the same arbitration. In those

---

[1] CBIC references that there are four parties to the RFA: CBIC, Clear Blue Specialty Insurance Co. ("CBSIC"), Swyfft, and Core. Resp. at 7. In the North Carolina action, Core moved to compel arbitration of the claims brought against it by CBIC and CBSIC. Although CBSIC is a party to the Core GAA, it is not a party to the Swyfft GAA and therefore it has no claims against Swyfft in the North Carolina action or that would be subject to the arbitration provisions of the Swyfft GAA.

situations, the claims must be split between the arbitrations and the legal proceeding instead of all being resolved "in the same action." *See, e.g.*, *G&G Closed Circuit Events, LLC v. Castillo*, 2017 WL 1079241, at *9 (N.D. Ill. Mar. 22, 2017) (discussing test for whether to stay non-arbitrable claims pending resolution of other claims in arbitration). Further, here, the arbitration provisions of the Swyfft GAA require arbitration in Illinois, while the provisions of the Core GAA require arbitration in North Carolina. Swyfft GAA § 12.06; Core GAA § 13.06. CBIC's counsel drafted those provisions, Complaint at ¶ 38, *Clear Blue Ins. Co. v. Swyfft LLC*, No. 3:24-cv-1063 (W.D.N.C.), ECF No. 1, so it should come as no surprise to CBIC that it may have to arbitrate the claims against Swyfft and Core in different forums. In any event, CBIC has the ability under the GAAs to consolidate the arbitrations. *See* Swyfft GAA § 12.04.

## III. The RFA is an agreement ancillary to the Swyfft GAA.

CBIC makes a cursory argument that its claims under the RFA are not subject to arbitration under the arbitration provisions of the GAA because the RFA is not ancillary to the GAA. Resp. at 8-9; *see* Swyfft GAA § 12.06 ("In the event of a dispute between the Parties concerning this Agreement . . . or any other agreement ancillary thereto, the entire dispute shall be subject to arbitration as provided in this Article[.]").

The RFA is an "agreement ancillary" to the GAA. The plain meaning of "ancillary" is "supplementary," Black's Law Dict. (12th ed. 2024), or "providing necessary support to the primary activities or operation of an organization, system, etc.," Oxford Dict. of English (3d ed. 2010). The RFA is supplementary to the GAA and provides necessary support to the Swyfft Program created by the GAA. The RFA itself reflects that it is ancillary to the GAA because it begins with a reference to the GAA and then states that its purpose is to memorialize agreement regarding future and reimbursement guarantees in connection with reinsurance on the insurance

program created by the GAA. RFA, Recitals. In the Background section, Paragraph A begins with a reference to the fact that Swyfft and CBIC "are parties to certain GAAs . . . pursuant to which" they "produce certain insurance programs." Three paragraphs later, Paragraph D expressly states that the RFA's purpose is to "memorialize [the Parties'] agreements regarding future funding and reimbursement guarantees" to CBIC "in connection with reinsurance on the [Swyfft Program]." The Swyfft Program was created by the GAA and a primary purpose of the GAA was to delineate the Parties' obligations for funding the costs of reinsurance for the Program. The RFA directly pertains to that issue—its express purpose is to clarify what funding and reimbursement obligations Swyfft has to CBIC with respect to reinsurance on the Swyfft Program. The RFA thus is clearly an ancillary agreement to the GAA.

CBIC's allegations in its North Carolina action provide further proof. There, CBIC alleges that the reinsurance it purchased for the Swyfft Program "was crucial to the operation" of the Program. Compl., ¶ 25. The GAA created the Swyfft Program, and it was contingent on CBIC's reinsurance contracts. Swyfft GAA, Preamble. The GAA sets out the Parties' obligation to pay the costs of reinsurance. Swyfft GAA, Art. 5. As CBIC alleges, the GAA "already obligated . . . Swyfft to remit premiums sufficient to fund . . . the Swyfft Program's costs, including reinsurance costs." Compl., ¶ 46. The RFA's "new payment obligations" and "separate and distinct remedy" relating to those reinsurance costs set out in the RFA are "supplementary" to the GAA.

And if there were any question whether the RFA is an ancillary agreement to the GAA, the Court must read the arbitration provisions liberally and in favor of arbitration. *See Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1002 (N.D. Ill. 2013) ("[C]ourts must heed [the] strong federal policy favoring arbitration by liberally and broadly construing the contractual language concerning the scope of arbitral issues in an arbitration agreement and by resolving all doubts with respect to

the contract's coverage in favor of arbitration.").

CBIC also cites two instances in which courts have described certain agreements as ancillary. Resp. at 8-9. But neither case is instructive here because those courts did not hold that *only* the agreements at issue would meet the definition of ancillary. First, in *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, the court determined that certain agreements were "ancillary agreements pertaining to the details of the actual importation of the affiliates' products," without which "the exclusive distribution agreements would be largely illusory." 863 F.2d 315, 319 (4th Cir. 1988). As a result, disputes under those ancillary agreements "ar[ose] in connection with the present contract" and were subject to arbitration. *Id.* at 318-19. The court's off-hand reference to the agreements being "ancillary" did not purport to apply any particular definition to determine what constitutes an "ancillary agreement"—there was no need to define "ancillary agreement" because the arbitration provision only required a "connection" to the contract—and it did not state that an agreement like the RFA would not be ancillary to the GAA. Similarly, the Ninth Circuit in *Ketchikan Pulp Co. v. Foothill Capital Corp.*, did not define "ancillary agreement." 134 F. App'x 114, 116 (9th Cir. 2005). Instead, the parties defined certain agreements as "Ancillary Agreements" and the court held that those agreements should be read as part of the primary agreement because they provided necessary terms. *Id.* Whether those agreements met a definition of "ancillary agreement" was not relevant to the court's analysis.

## IV. There is no need for a trial on Swyfft's Petition.

CBIC argues that it has raised genuine issues of fact regarding whether there is an agreement to arbitrate to justify a trial on Swyfft's Petition. Resp. at 9. Under the FAA, "[a] trial to determine arbitrability . . . is required only if the issue that an evidentiary hearing would resolve is fairly contestable." *American Int'l Specialty Lines Ins. Co. v. Electronic Data Sys. Corp.*, 347

F.3d 665, 671 (7th Cir. 2003) (citing 9 U.S.C. § 4). "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). The standard is analogous to the summary judgment standard, and "the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id*.

CBIC does not cite any alleged factual disputes. To the contrary, CBIC's sole arguments against arbitration—that (i) the RFA forum selection clause controls; (ii) the Court cannot compel arbitration of CBIC's claims against Core; and (iii) the RFA is not an ancillary agreement within the meaning of the GAA's arbitration provisions—should be rejected as a matter of law for the reasons stated.

## CONCLUSION

For these reasons, Swyfft respectfully requests that the Court grant its Petition and order arbitration in Illinois of CBIC's claims against Swyfft under the RFA.

Dated March 31, 2025

Respectfully submitted,

MAYER BROWN LLP

By:*/s/ Michael J. Gill*
    Michael J. Gill
    Brett E. Legner
    Mairead J. Fitzgerald-Mumford
    71 S. Wacker Dr.
    Chicago, IL 60606-4637
    Telephone: (312) 782-0600
    Facsimile: (312) 701-7711
    mgill@mayerbrown.com
    blegner@mayerbrown.com
    mfitzgeraldmumford@mayerbrown.com

    *Attorneys for Swyfft, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, I caused the foregoing document to be served via

CM/ECF on all counsel of record.


*/s/ Michael J. Gill*
Michael J. Gill